UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

KEIONZIE CLEMENTS and ERIC ALLEN,

                            Plaintiffs,

            -against-

VILLAGE OF DRYDEN, NEW YORK; TOWN OF
DRYDEN, NEW YORK; DAVID SPROUT, Code
Enforcement Officer for the Town and Village of Dryden,
in his official and individual capacity; SHELLEY
KNICKERBOCKER, Code Enforcement Officer for the
Town and Village of Dryden, in her official and individual
capacity; LINDA BRUNO, and JUDITH JOHNSON,

                         Defendants.

-----------------------------------------------------------------------x

**COMPLAINT**

Case No.: 3:23-CV-0189 (TJM/ML)

## PRELIMINARY STATEMENT

1.      Plaintiffs KEIONZIE CLEMENTS and ERIC ALLEN, ("Tenants") bring this

action against the VILLAGE OF DRYDEN, TOWN OF DRYDEN, DAVID SPROUT, and

SHELLEY KNICKERBOCKER for violations of their state and constitutional rights to due

process, protection from unlawful seizures, the violation of legally established procedures

regarding code enforcement, and freedom from illegal ejectment from their homes. Plaintiffs also

bring a pendent state claim against property owner LINDA BRUNO and property manager

JUDITH JOHNSON for violations of the Warranty of Habitability, Negligence, and Gross

Negligence.

2.      Tenants were the lawful residents of apartments at 12 – 14 W. Main Street in Dryden, Tompkins County, New York after having entered into leases with the property owner, Linda Bruno. On October 28, 2021, the Village of Dryden posted a Notice of Order to Vacate and Secure on the doors of the building. This Notice gave the tenants 72 hours to vacate the premises and ordered tenants to leave by October 31, 2021 at 5:00 P.M without any opportunity for a pre-deprivation hearing. In response to a demand from Plaintiffs' counsel, the Village scheduled a hearing for November 9, 2021 but, upon information and belief, had already pre-determined the outcome of the hearing and proceeded with the condemnation of the building. All tenants were ordered to leave their homes by November 15, 2021, with no enforcement action taken against the owner. All tenants became homeless on November 15, 2021 and either entered the shelter system, became reliant on community supports, and/or spent time without any housing as a result of being forced to leave their homes.

3.      Plaintiffs assert that the Defendants Village of Dryden and Town of Dryden, in violation of the Fourteenth Amendment of the United States Constitution, and State and Local statutes, codes, and regulations, unlawfully and without due process of law caused them to be removed from their homes. Defendants' actions and inaction directly resulted in the loss of Plaintiffs' apartments, homelessness, monetary losses, loss of personal property, as well as emotional distress.

4.      In bringing this action, Plaintiffs seek an order from this Court granting compensatory and punitive damages, declaratory relief, injunctive relief, costs and fees.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 (federal question) and 1343 (civil rights claim), in conjunction with 42 U.S.C. § 1983 (the Civil Rights Act of 1871).

6.      The Court has jurisdiction under 28 U.S.C. § 1367 to reach Plaintiffs' pendent state law claims.

7.      Venue is proper in the Northern District of New York pursuant to 28 U.S.C. §1391(b) and (c) because the events or omissions giving rise to the claim occurred in this judicial district.

8.      The Court has the authority to grant monetary and injunctive relief pursuant to 42 U.S.C. § 1983 and RPAPL § 853; fees and costs pursuant to 42 U.S.C. § 1988, and declaratory relief pursuant to 28 U.S.C. § 2201.

## PARTIES

9.      Plaintiff Keionzie Clements lived at all relevant times in the Village of Dryden, Tompkins County, New York at 12 – 14 W. Main Street, Dryden, NY 13053, which is the subject premises of this proceeding and is located within the Village of Dryden.

10.     Plaintiff Eric Allen lived at all relevant times in the Village of Dryden, Tompkins County, New York at 12 – 14 W. Main Street, Dryden, NY 13053, which is the subject premises of this proceeding and is located within the Village of Dryden.

11.     Defendant Village of Dryden is the municipality wherein the subject premises are located, failed to provide proper notice and a meaningful hearing to Plaintiffs, and authorized the posting of an Order to Vacate at 12 – 14 W. Main. The Village of Dryden is responsible for the appointment of a code enforcement officer and determining whether structures are unsafe to

occupy. *Village of Dryden Zoning Law* Article 315. Village of Dryden is a municipal corporation established under the laws of the State of New York, and has its offices at 16 South Street, Dryden, NY 13053.

12.     Defendant Town of Dryden's Office of Planning and Code Enforcement, upon information and belief, has a contract with the Village of Dryden for code enforcement inspections. Upon information and belief, pursuant to this contract, Town of Dryden Planning and Code Enforcement is the authority having jurisdiction as the governmental unit or agency responsible for administration and enforcement of the Uniform Code, pursuant to New York State Building Code § 202.

13.     Defendant David Sprout is an employee of the Town of Dryden, and upon information and belief was working as a Code Enforcement Officer for properties located in both the Town and Village of Dryden at the time of the incidents complained of. He is sued in his official and individual capacity.

14.     Defendant Shelley Knickerbocker is an employee of the Town of Dryden, and upon information and belief was working as a Code Enforcement Officer for properties located in both the Town and Village of Dryden at the time of the incidents complained of. She is sued in her official and individual capacity.

15.     Defendant Linda Bruno is, according to public records, the owner of the subject premises.

16.     Upon information and belief, Defendant Judith Johnson was at all relevant times a property manager and represented herself as Linda Bruno's agent at 12 – 14 W. Main Street in Dryden, New York, and was charged with upkeep of the premises and management of the residential rental property.

## LEGAL FRAMEWORK

### Due Process of Law

17.    Under the Fourteenth Amendment to the United States Constitution, a state may not "deprive any person of life, liberty or property without due process of law."

18.    Tenants have a property interest in their leaseholds and a right to continued residency in their homes. *See Greene v. Lindsey*, 456 U.S. 444, 450-451 (1982); *U.S. v. Petty Motor Co.*, 327 U.S. 372 (1946); and *Breon v. Perales*, 2015 WL 7289399, (W.D.N.Y. 2015); 2016 WL 8839518 (W.D.N.Y. 2016).

19.    Before a party suffers a deprivation by a state actor, procedural due process requires notice and an opportunity to be heard.  *Fuentes v. Shevin, Parham and Cortese*, 407 U.S. 67, 80 (1972).

20.    Due process of law requires that a person who is to be deprived of a protected interest first be given "notice reasonably calculated to apprise [the person] of the availability of an administrative procedure."  *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 22 (1978) (Holding that termination of utility service without notice of the opportunity to challenge billings deprived utility customer of procedural due process of law).

21.    Notice and hearing may only be postponed until after a deprivation in very limited circumstances where there is, *inter alia*, a "special need for very prompt action" "under the standards of a narrowly drawn statute."  *Fuentes*, *supra* at 91.

22.    Tenants who are directed to vacate housing due to allegedly unsafe conditions are accordingly entitled to constitutionally adequate notice of their right to challenge a code officer's determination to deprive them of their housing.  *Flatford v. City of Monroe*, 17 F.3d. 162, 169 (6th Cir. 1994).

**Unlawful Seizure**

23.     The opportunity to be heard at a "meaningful time and in a meaningful manner" is a "fundamental requisite of due process of law" and requires "timely and adequate notice" of the details regarding a deprivation as well as an "effective opportunity" to challenge the deprivation. *Goldberg v. Kelly*, 397 U.S. 2054, 2067-68 (1970) (internal quotes omitted).

24.     Under the Fourth Amendment to the United States Constitution, a person has the "right … to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

25.     A "seizure" of property within the meaning of the Fourth Amendment occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County,* 506 U.S. 56, 61 (1992).

26.     Fourth Amendment protection from unlawful seizure applies within the civil context. *Id.* at 66 – 69 (collecting cases and, in dicta, describing hypothetical seizure of a house in order to verify compliance with a housing regulation as a "transgression" falling within the parameters of the Fourth Amendment).

**New York State Law and Regulations on Enforcement of Building Codes**

27.     The text of the New York State Uniform Fire Prevention and Building Code ("Building Code") is found in Title 19 of the New York Codes, Rules and Regulations (NYCRR), Parts 1219 through 1229.

28.     The Building Code addresses a range of housing requirements, including safety and sanitary conditions, and also includes the New York State Property Maintenance Code ("Property Maintenance Code"). 19 NYCRR § 1219.1.

29.    Pursuant to New York Executive Law § 381(2), local governments are required to enforce the Building Code, unless exempted by regulation by the Secretary of State.

30.    Local governments are required to establish their own code administration and enforcement systems. 19 NYCRR § 1203.2.

31.    Local governments are authorized to use any enforcement tool to enforce its Orders to Remedy, including but not limited to appearance tickets, criminal or civil sanctions, and actions under New York Executive Law § 382(2)-(3). 19 NYCRR § 1203.3.

32.    All residential structures must comply with the Property Maintenance Code. 19 NYCRR § 1226.1.

33.    Property Maintenance Code § 107.1 authorizes a structure to be condemned pursuant to the provisions of the code "[w]hen a structure … is found to be unsafe, or when a structure is found unfit for human occupancy, or is found unlawful."

34.    The need to ensure constitutionally adequate safeguards when deeming housing unsafe is highlighted by New York State's Property Maintenance Code are bound by the requirements articulated in the 2017 Uniform Code Supplement. 19 NYCRR § 1226.1.

35.    Section 103.2 of the Uniform Code states:

> Nothing in this Chapter 1, or elsewhere in the Uniform Code, or in any regulation promulgated pursuant to Executive Law § 381(1), shall be construed as authorizing any governmental unit or agency responsible for administration and enforcement of the Uniform Code to do so in a manner that deprives any person or entity of due process of law. In particular, but not by way or limitation, nothing in this Chapter 1 relating to posting, placarding and/or condemnation of buildings or structures that are unsafe, unfit for human occupancy or unlawful shall be construed as authorizing any governmental unit or agency responsible for administration and enforcement of the Uniform Code to post, placard or condemn any such building or structure and/or to remove any owner or occupant or cause any owner or occupant to be removed from any such building or structure without providing such notice and opportunity to be heard (and, if applicable, right of appeal) as may be required under the applicable circumstances by applicable Constitutional provisions.

36. The New York State Department of State Building Codes and Standards Division issued a Technical Bulletin in 2016 which directs that immediate placarding without a pre-deprivation hearing is reserved for situations of "imminent danger." The Technical Bulletin limits "imminent danger" to situations where the building is on fire, about to collapse, filled with toxic fumes, or there is some other similar emergency. *Technical Bulletin*, N.Y. Dep't of State Building Standards and Codes (September 28, 2016) at 2.

### Dryden Village Zoning Law

37. Section 31108(B)(1) of the Village of Dryden Zoning Law requires that, "Multiple dwellings shall be inspected for the purpose of determining compliance with fire prevention and housing maintenance requirements of the Uniform Code at least once in every thirty-six (36) months." *Id*.

38. Section 31501 of the Village of Dryden Zoning Law addresses "unsafe buildings" and the process for repair or demolition and removal of the building. This section provides for notice of the Village's intent to declare a building unsafe to any adult person residing in or occupying the premises and a statement that the securing or removal of such building shall commence within thirty (30) days of the service of the notice. It also provides for a hearing before the Village Board not less than five (5) days from the date of the notice. *Id*.

39. Section 31501(E) of the Village of Dryden Zoning Law requires personal service of the notice upon any adult person residing in or occupying said premises.

40. Section 31102 Dryden Village Zoning Law enumerates the powers of the Code Enforcement officer and does not include any authorization for such officer to independently determine that a structure is unsafe to occupy, but instead requires the officer to submit a written report to the Village Board.

**New York Real Property Law**

41.    New York Real Property Actions and Proceedings Law (RPAPL) § 853 provides a cause of action and treble damages against a party who unlawfully ejects a person from real property.

42.    New York State law also requires landlords to maintain their rental properties in compliance with the Uniform Code and the Statutory Warranty of Habitability. Real Property Law § 235-b.

## <u>RELEVANT FACTS</u>

**Removal of Plaintiffs From Their Homes**

43.    Plaintiff Clements resided at 12 – 14 W. Main Street since August 2020.

44.    Plaintiff Allen resided at 12 – 14 W. Main Street for more than three (3) years.

45.    Both Plaintiffs had either written leases or month-to-month tenancies following the expiration of their leases and legally occupied their apartments.

46.    On or about May 3, 2021, the Village of Dryden received a Code Enforcement Complaint regarding 12 – 14 W. Main Street, Apartment 7, occupied by tenants Keionzie Clements and her fiancé.

47.    After an inspection, Town of Dryden's Code Enforcement Officer David Sprout sent a Notice of Violation and Order to Remedy on June 16, 2021 to Defendant Bruno, the owner of 12 – 14 W. Main.

48.    This notice was not served on Keionzie Clements as required by Zoning Law 31501 but obtained upon request by her counsel.

49.    The code violations that Defendant Bruno was required to remedy in Keionzie Clements' apartment by July 8, 2021 were:

a.      Bathroom sink is on the floor, toilet reportedly backs up on occasion;

b.      Bathroom exhaust discharges into kitchen;

c.      Window in the room adjacent to bathroom does not lock;

d.      Entry door is in poor condition, does not fit frame properly;

e.      Electrical panel is inaccessible due to oversized refrigerator;

f.      Interior surfaces are in poor condition – holes in walls, poorly patched holes, evidence of water leak, mold.

50.     Keionzie Clements (Apartment 7) had been requesting repairs through Defendant Bruno's property manager, Defendant Judith Johnson, since approximately September 2020.

51.     Defendant Bruno did not remedy the violations listed above by Code Enforcement nor did Defendant Johnson make any repairs.

52.     On September 29, 2021, Town of Dryden Code Enforcement Officer David Sprout re-inspected Apartment 7 and sent another Notice of Violation and Order to Remedy to Defendant Bruno that certain immediate repairs be made by October 7, 2021: Toilet be made functional, bathroom sink reinstalled and made functional, and smoke and carbon monoxide detectors installed.

53.     This notice was not served on Keionzie Clements as required by Zoning Law 31501 but obtained upon request by her counsel.

54.     Counsel for Tenant Clements contacted Defendant Bruno on October 4, 2021 by letter requesting that maintenance be performed.

55.     Ms. Clements requested assistance from the Ithaca Tenants Union (ITU), a local advocacy group. On or around October 8, 2021, ITU paid for and replaced her toilet and paid for

the smoke and carbon monoxide detectors in Apartment 7, as directed in the Notice of Violation, to avoid condemnation of their apartment.

56.     Ms. Clements and her fiancé had been without a working toilet for approximately four (4) months and had been using the bathroom at the nearby library and gas station during that time.

57.     Tenant Eric Allen (14 W. Main, Apartment 2) also requested maintenance from Defendant Bruno, via Defendant Judith Johnson. Since moving into his apartment in 2018, Mr. Allen's apartment was broken into numerous times and many items were stolen because of a faulty door lock. He repaired his front and back doors and door frames multiple times, and asked for window screens and repairs from Defendant Johnson. He also obtained his own fire extinguisher, and smoke and carbon monoxide detectors, as they were not provided by Defendants Bruno or Johnson.

58.     On October 15, 2021, Code Inspection Officers Shelley Knickerbocker and David Sprout inspected all apartments, commercial space, and common areas at 12 – 14 W. Main and found numerous violations, totaling 7 pages of code violations in the individual apartments and building as a whole.

59.     This Notice of Violation and Order to Remedy was sent to Defendant Bruno, but a copy was not served on any tenants of the building at that time, as required by Zoning Law 31501.

60.     The violations cited in the October 15, 2021 Notice of Violation / Order to Remedy, in pertinent part, include:

a.  Entire Building: Electrical system hazards were identified throughout – open wiring, flickering fixtures, inoperable receptacles, broken receptacles, receptacles tested as "open ground," extension cords in use.

b.  Entire Building: Each building, apartment and room shall be clearly identified.

c.  Entire Building: smoke detectors, carbon monoxide detectors, and currently charged fire extinguishers missing throughout the building.

d.  Entire Building: Rear exterior stairs are missing several treads, multiple areas where the sheetrock has holes

e.  Entire Building: Possible Roof Leak – several areas show damage from water. A note was made to evaluate the possibility of a roof leak.

f.  Apartment 7 (Plaintiff Clements): The bathroom sink is not operational, there is no bathroom ventilation, the bedroom window does not latch and is not secure; entry door to the dwelling is not secure, the gas cook stove does not work.

g.  Main Street Upstairs Front (Plaintiff Allen): The rear exit door was screwed shut because it is not secure.

61.  At the time of all the above-referenced inspections, the Certificate of Compliance for 12 – 14 W. Main Street, required for all rental units, had expired as of March 28, 2021.

62.  A Freedom of Information Law (FOIL) Request by tenants' counsel revealed that a number of code inspections throughout the years by Village and Town Defendants include the very same violations cited in the October 15, 2021 Order to Remedy, including:

a.  Electrical issues including open wiring, nonworking fixtures, uncovered outlets, improper wiring, and/or overloaded electrical panels found in inspections in 1987, 2000, 2004, 2007, and 2009;

b.      Missing smoke and carbon monoxide detectors found in inspections in 2000, 2004, 2007, 2009, 2010, and 2013;

c.      Water-related damage from roof leak found in inspections in 2007, 2009, and 2010;

d.      Room used as a bedroom that was not allowed to be used as such found in inspections in 2000, 2009, and 2013;

e.      Missing or deteriorating siding found in inspections in 2011 and 2013;

f.      General lack of maintenance found in an inspection in 2010;

g.      Windows not weathertight or locking found in an inspection in 2009;

h.      Improper locks, doors not latching properly, and means of egress obstructed found in inspections in 2004, 2007, and 2009;

i.      Improper bathroom venting found in inspections in 2007 and 2009;

j.      Fire extinguishers failing annual check found in an inspection in 2013.

63.      Pursuant to 19 NYCRR 1203.2 the Village Defendants have a non-delegable duty to enforce the Property Maintenance Code at the premises.

64.      The Village Defendants have multiple remedies available to them to compel owners of substandard residential properties to correct violations. 19 NYCRR § 1203.3; 19 NYCRR § 1203.5.

65.      Upon information and belief, the only action ever taken against Defendant Bruno by Defendants Village of Dryden, Town of Dryden, David Sprout, and/or Shelley Knickerbocker was to send letters and Notices of Violations and Orders to Remedy.

66.    Upon information and belief, over several decades, no other enforcement action was ever taken against Defendant Bruno to ensure safe and habitable housing for tenants at this address.

67.    Instead of further enforcement of the Notices against Defendant Bruno, the Village would summarily order the tenants and occupants to vacate the premises.

68.    Upon information and belief, the code violations cited in Paragraph 62 *supra* have never been corrected by Defendant Bruno nor have Village or Town Defendants ever enforced the code against Defendant Bruno.

69.    The code violations cited in the October 15, 2021 Notice to Remedy have in some cases been ongoing issues in this building for decades without any substantive enforcement action by the Village or Town Defendants.

**Orders to Vacate and Hearing**

70.    On October 28, 2021, the Village of Dryden issued a Notice of Order to Vacate and Secure based on the violations in the October 15, 2021 Notice of Violation (*supra* ¶ 60).

71.    The October 28th Notice of Order to Vacate was either handed to tenants or taped on their doors.

72.    The October 28th Notice of Order to Vacate gave the tenants 72 hours to vacate the premises and ordered tenants to leave by October 31, 2021 at 5:00 P.M.

73.    No previous notice had been given to any tenants.

74.    No opportunity for a pre-deprivation hearing was provided with the October 28th Notice.

75.    The October 28th Notice of Order to Vacate attached a copy of the October 15, 2021 Notice to Remedy previously sent only to Defendant Bruno and stated, "Based on the 2020

Fire Code and reasonable information and belief, the condition of such premises constitutes a clear and imminent danger to the life or health of occupants or other persons and that protection of life or health requires vacating the premises."

76.    Prior to the October 28th Notice of Order to Vacate, tenants had not seen a copy of the Notice to Remedy sent to Defendant Bruno on October 15, 2021.

77.    The October 28th Notice of Order to Vacate was signed by Defendant Village of Dryden Deputy Mayor and Village Trustee Deb Fisher.

78.    On October 29, 2021, counsel for the Plaintiffs contacted the Defendants Village of Dryden and Town of Dryden by letter, fax, and/or email requesting a due process hearing before the Order to Vacate was enforced.

79.    In response to Plaintiffs' counsel's correspondence and request, Defendant Village of Dryden delayed placarding Plaintiffs' building and scheduled a hearing for November 9, 2021 before the Village Trustees and re-sent notices to the tenants on October 29, 2021.

80.    Building violation and inspection documents for this property were at all times available to the Village and Town Defendants, including at the time of the hearing, but despite the prompt request of Plaintiffs' counsel were not provided to Tenants until November 24, 2021, well after the hearing.

81.    Upon information and belief, Defendant Village of Dryden determined and wrote the findings, conclusions and outcome of the hearing prior to the November 9, 2021 hearing.

82.    At the public hearing on November 9, 2021, Plaintiffs Keionzie Clements and Eric Allen spoke regarding the issues they had with trying to obtain maintenance from the building owner and the impact the condemnation would have on them as tenants.

83.     Plaintiffs Clements and Allen testified that they did not have anywhere else to go and would be forced to use the county's shelter system and/or become homeless.

84.     Attorney Alissa Hull from Legal Assistance of Western New York, Inc. set out the availability of enforcement options under New York Executive Law 382, the Village's authority to make repairs and seek compensation from the building owners, and that the long-standing nature of the repairs to be made should not be a sudden emergency for the tenants when remedies were available against the owner.

85.     Tenants and their counsel were not allowed to ask questions of the Village and Town Defendants, including code enforcement officers, during this hearing.

86.     Upon information and belief, neither Defendants Bruno nor Johnson appeared, nor did they send a representative to speak at the hearing.

87.     After entering into Executive Session, Defendant Village of Dryden, through its Trustees, passed four resolutions to proceed with placarding the building.

88.     These resolutions directed the occupants of the subject premises to vacate in five (5) days.

89.     Unbeknownst to the attendees or Tenants, these resolutions had been drafted before the hearing. The Meeting Agenda prepared in advance of this hearing already contained the outcome of the hearing, with the resolutions pre-printed in the Agenda.

90.     Upon information and belief, Defendant Village of Dryden had pre-determined the outcome of the hearing, as indicated in their Meeting Agenda.

91.     The passage of the resolutions, which had been drafted prior to the hearing, resulted in the homelessness of Plaintiffs.

92.    Upon information and belief, Defendants Village of Dryden and its Board of Trustees have not taken sufficient steps to ensure that Defendant Town of Dryden and its Code Enforcement Officers comply with the Village Zoning Law, New York State's regulations, and the New York State Department of State Technical Bulletin regarding posting of unsafe structures.

93.    Upon information and belief, Defendants Village of Dryden and Town of Dryden's Office of Planning and Code Enforcement have not taken actions to ensure that tenants or occupants are provided with a meaningful opportunity to challenge a determination that a structure is unsafe.

94.    Upon information and belief, there is no meaningful standard in the Dryden Village Zoning Law to determine which conditions are so severe as to merit placarding a structure either before or after a hearing.

95.    Upon information and belief, it is the pattern and practice of the Village of Dryden and Town of Dryden's Office of Planning and Code Enforcement to placard occupied residential properties without prior substantive attempts to enforce its own orders to remedy.

96.    Upon information and belief, it is the pattern and practice of the Village of Dryden and Town of Dryden's Office of Planning and Code Enforcement to placard occupied residential properties and eject tenants in the place of the available statutory enforcement mechanisms.

97.    Upon information and belief, it is the pattern and practice of the Village of Dryden and Town of Dryden's Office of Planning and Code Enforcement to make determinations to placard properties and eject tenants without considering the testimony or evidence of affected tenants and occupants.

**After Condemnation**

98.    Following the condemnation of 12 – 14 W. Main Street, the Plaintiffs all tried to access Tompkins County Department of Social Services (DSS) assistance.

99.    Plaintiff Keionzie Clements and her fiancé were initially unable to utilize DSS for shelter assistance because they had raised approximately $4,000 from community groups and charities because they were facing homelessness and were required to pay for hotel rooms and food from this fund for nearly three months.

100.    Keionzie Clements was housed with her fiancé by DSS from approximately mid-February 2022 until approximately April 1, 2022, after which they experienced difficulties with getting approval from DSS to be housed together as a household.

101.    Keionzie Clements lost nearly all of her personal property, furniture, and clothes when she had to move hastily from 12 – 14 W. Main Street. She also had to give away her pet cats. She did not have a vehicle and relied on public transportation and other ride assistance to obtain even basic necessities.

102.    Tenant Eric Allen was housed by DSS in motels from approximately November 15, 2021 through April 1, 2022. These motels were miles from his former residence and at least one motel was miles from any food or convenience store. He lost personal property that he left behind in his apartment at 12 – 14 W. Main Street, as the building was not secured by Defendants and his property was stolen. He did not have a vehicle and relied on public transportation and other ride assistance to obtain even basic necessities.

**Procedural History**

103.    On February 7, 2022 Plaintiffs Clements and Allen caused a notice of claim to be served on Defendants Village of Dryden and Town of Dryden pursuant to New York General Municipal Law §§ 50-e and 50-i.

104.    On April 20, 2022, Plaintiff Clements gave testimony at a hearing pursuant to New York General Municipal Law § 50-h, noticed by Defendant Village of Dryden.

105.    On July 11, 2022, Plaintiff Allen gave testimony at a hearing pursuant to New York General Municipal Law § 50-h, noticed by Defendant Village of Dryden.

106.    Defendant Town of Dryden never noticed Plaintiffs for a hearing pursuant to New York General Municipal Law § 50-h.

**FIRST CAUSE OF ACTION**

**Civil Rights Violation: Due Process Clause of the Fourteenth Amendment to the U.S. Constitution**

107.    DEFENDANTS VILLAGE OF DRYDEN, TOWN OF DRYDEN, DAVID SPROUT, and SHELLEY KNICKERBOCKER ("Dryden Defendants"), acting in concert and under color of law, violated ALL PLAINTIFFS' right to due process of law under the Fourteenth Amendment to the United States Constitution, as made actionable by the Civil Rights Act of 1871, 42 USC § 1983, by their actions and omissions described above, and including, but not limited to, the following particulars:

      a.    Dryden Defendants placarded and allowed the premises to be placarded as unsafe for occupancy and prohibited all plaintiffs from occupying their homes without providing a written notice that afforded a timely and adequate notice of a meaningful opportunity to be heard, and without providing said meaningful opportunity to be heard.

     b.     Dryden Defendants posted and allowed the premises to be posted in the absence of imminent risk to all plaintiffs' health.

     c.     Dryden Defendants failed to serve any tenants, including Plaintiffs, with any of the Notices of Violations or Orders to Remedy before issuing an Order to Vacate.

     d.     Defendant Village of Dryden failed to provide the tenants a meaningful opportunity to be heard before forcing them from their homes.

     e.     Defendant Village of Dryden failed to consider the readily available alternatives to displacing Plaintiffs, such as actual enforcement of the Code.

     f.     Defendant Village of Dryden enacted a local law which does not comport with the due process guaranteed by the United States Constitution and deliberately maintains an official policy under which property is placarded as unsafe for occupancy without adherence to due process. Neither the local law nor the policy defines how "unsafe structure" is determined or ensures that notice pre- or post-deprivation relief available.

     g.     Dryden Defendants acted outside of local law and procedures otherwise established by the Dryden Village Zoning Law for the posting of property as unsafe.

     h.     Dryden Defendants do not have a process for addressing and securing compliance with their Notices of Violations and Orders to Remedy.

108.    Dryden Defendants' failure to pursue compliance with code requirements and failure to enforce the local Zoning Law caused the homelessness of Plaintiffs.

109.    Dryden Defendants' Order to Vacate the premises issued to the plaintiffs constitutes an unlawful deprivation of the plaintiffs' due process rights in violation of the Fourteenth Amendment to the United States Constitution.

110.    Dryden Defendants are liable for the deprivation of the plaintiffs' Fourteenth Amendment rights. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) ("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ... the government as an entity is responsible under § 1983").

111.    Based upon the foregoing, Plaintiffs are entitled to an award of compensatory damages and punitive damages as well as an award for reasonable attorneys' fees and costs. Plaintiffs further seek declaratory and injunctive relief barring Dryden Defendants from ongoing violations of the Fourteenth Amendment.

## SECOND CAUSE OF ACTION

### Civil Rights Violation: Unlawful Seizure in Violation of the Fourth Amendment to the U.S. Constitution

112.    DEFENDANTS VILLAGE OF DRYDEN, TOWN OF DRYDEN, DAVID SPROUT, and SHELLEY KNICKERBOCKER ("Dryden Defendants"), acting in concert and under color of law, violated ALL PLAINTIFFS' right to freedom from unlawful seizure under the Fourth Amendment to the United States Constitution, as made actionable by the Civil Rights Act of 1871, 42 USC § 1983, by their actions and omissions described above, and including, but not limited to, the following particulars:

a.    Plaintiffs had an established property interest in the premises as tenants and occupants of the apartments at 12 – 14 W. Main Street.

b.    Dryden Defendants, individually and in concert, ordered Plaintiffs to leave their homes via written Order to Vacate, and placarded the property.

21

      c.     Such actions substantially interfered with Plaintiffs' use and possession of the premises.

      d.     Such action was without any basis in the laws or codes of the State of New York or the Village of Dryden.

113.    Plaintiffs were damaged in the amount of the value of their loss of housing.

114.    Plaintiffs were also damaged by the illegal eviction in the amount of all consequential and reasonable monetary damages sustained as a result of having to find interim alternative housing during a period in which they were entitled to occupy the premises.

115.    Dryden Defendants' Order to Vacate the premises issued to Plaintiffs constitutes an unlawful seizure and deprivation of real property rights in violation of the Fourth Amendment to the United States Constitution. *See Soldal v. Cook County*, 506 U.S. 56, 61 (1992) ("A 'seizure' of property ... occurs when 'there is some meaningful interference with an individual's possessory interests in that property'").

116.    Dryden Defendants are liable for the deprivation of Plaintiffs' Fourth Amendment Rights. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978) ("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury … the government as an entity is responsible under § 1983").

117.    Based on the foregoing, Plaintiffs are entitled to an award or compensatory damages as well as an award for their reasonable attorneys' fees and costs. Plaintiffs further seek declaratory and injunctive relief barring Dryden Defendants from ongoing violations of the Fourth Amendment.

## THIRD CAUSE OF ACTION

### Village and Town Defendants: State Claim for Unlawful Eviction

118.    DEFENDANTS VILLAGE OF DRYDEN, TOWN OF DRYDEN, DAVID SPROUT, and SHELLEY KNICKERBOCKER ("Dryden Defendants"), individually and in concert, permanently ejected ALL PLAINTIFFS from the leased premises, without instituting any legal proceeding to extinguish their rights to continued possession of the premises.

119.    Such action was without any basis in the laws or codes of the State of New York or the Village of Dryden.

120.    Where a party by unlawful means ejects another from real property, the injured party is entitled to collect treble damages against the wrongdoer under New York State Real Property Actions and Proceedings Law § 853.

121.    Dryden Defendants do not have a process for addressing and securing compliance with their Notices of Violations and Orders to Remedy.

122.    Dryden Defendants' failure to pursue compliance with code requirements and failure to enforce the local Zoning Law caused the homelessness of Plaintiffs.

123.    All Plaintiffs were damaged in the amount of the value of their loss of housing together with the consequential and immediate loss and destruction of any personal property.

124.    All Plaintiffs were also damaged by the unlawful eviction in the amount of all funds spent for their relocation to emergency shelter or family's houses, moving expenses, and the loss of personal property.

## FOURTH CAUSE OF ACTION

### Village and Town Defendants: State Claim for Failing to Enforce
### Property Maintenance Code

125.    DEFENDANTS VILLAGE OF DRYDEN, TOWN OF DRYDEN, DAVID

SPROUT, and SHELLEY KNICKERBOCKER ("Dryden Defendants"), failed to enforce the

New York State Property Maintenance Code, resulting in the ejectment and homelessness of

ALL PLAINTIFFS.

126.    Dryden Defendants have a non-delegable duty to enforce the New York State

Property Maintenance Code under New York Executive Law §§ 371 and 381.

127.    Dryden Defendants were aware of the violations of the New York State Property

Maintenance Code at 12 – 14 West Main Street and the property owner's failure to comply with

the Notices of Violations and Orders to Remedy.

128.    Dryden Defendants have a legal means to enforce the Property Maintenance Code

under New York Executive Law § 382, 19 NYCRR § 1203.2, and 19 NYCRR § 1203.5.

129.    Dryden Defendants failed to enforce the Property Maintenance Code at 12 – 14

West Main Street over many years.

130.    The defects at 12 – 14 West Main Street were long-standing due to the lack of

enforcement activities by the Dryden Defendants.

131.    The Dryden Defendants ejected Plaintiffs without pursuing any enforcement of

the code against the property owner and caused the homelessness of the plaintiffs.

132.    Upon information and belief, violations of the Property Maintenance Code still

exist at 12 – 14 West Main Street.

## FIFTH CAUSE OF ACTION

### Defendants Bruno and Johnson: State Claim for Breach of the Warranty of Habitability, Real Property Law Section 235-b

133.    Landlords have a duty to ensure that their rental properties are safe and fit for purposes intended by the parties.

134.    DEFENDANTS BRUNO and JOHNSON violated the Warranty of Habitability by failing to ensure that the properties that they rented were habitable.

135.    Defendants violated the Warranty of Habitability by failing to comply with Orders to Remedy, and allowing the premises to be placarded.

136.    The conditions and violations set out above in ALL PLAINTIFFS' homes were in violation of the Warranty of Habitability.


## SIXTH CAUSE OF ACTION

### Defendants Bruno and Johnson: State Claim for Negligence

137.    Landlords of real property are under a duty to maintain their rental properties in habitable condition and lawful condition.

138.    DEFENDANTS BRUNO and JOHNSON failed to exercise ordinary care in the maintenance and repair of the apartments rented to ALL PLAINTIFFS.

139.    Defendants breached this duty to such an extent that the Dryden Defendants deemed the premises unsafe and ordered all Plaintiffs to vacate, making them homeless.

140.    All Plaintiffs suffered economic losses and emotional distress directly and proximately due to Defendants Bruno and Johnson's negligence.

## SEVENTH CAUSE OF ACTION

### Defendants Bruno and Johnson: State Claim for Gross Negligence

141.    DEFENDANTS BRUNO and JOHNSON acted with reckless indifference to the rights of the ALL PLAINTIFFS by ignoring and taking no action on their requests for maintenance that were necessary for safe and habitable living conditions, as guaranteed under the warranty of habitability.

142.    Defendants acted with reckless indifference to the rights of all Plaintiffs by ignoring code enforcement's Orders to Remedy, knowing that the result would be displacement of tenants for the defendant's failure to act.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment:

1.    Assuming jurisdiction over this case;

2.    Declaring the actions of Defendants Village of Dryden, Town of Dryden, David Sprout, and Shelley Knickerbocker as set forth above, to be an unlawful denial of Plaintiffs' right to due process of law, as protected by the Fourteenth Amendment to the U.S. Constitution and made actionable by the Civil Rights Act of 1871, 42 U.S.C. §1983;

3.    Declaring the actions of Defendants Village of Dryden, Town of Dryden, David Sprout, and Shelley Knickerbocker as set forth above, to be an unlawful seizure of Plaintiffs' property, as protected by the Fourth Amendment to the U.S. Constitution and made actionable by the Civil Rights Act of 1871, 42 U.S.C. §1983.

4.    Declaring the provisions of the Village of Dryden Zoning Law Article 315 as a violation of the United States Constitution's 14th Amendment guarantee of due process;

5.      Declaring the actions of Defendants Village and Town of Dryden, David Sprout, and Shelley Knickerbocker to be a violation of Real Property Actions and Proceedings Law § 853;

6.      Enjoining Defendants Village of Dryden, Town of Dryden, David Sprout, and Shelley Knickerbocker from taking action to placard dwellings without proper inquiry, notice of specific defect, compliance with all state and local statutes and regulations, notice of pre- or post-deprivation relief available, and the provision of a meaningful hearing, or otherwise continuing to act upon their unlawful customs, policies and procedures in violation of New York State laws and Regulations, including RPAPL § 853, and Fourth and Fourteenth Amendments to the U.S. Constitution;

7.      Awarding Plaintiffs compensatory damages against Defendants Village of Dryden, Town of Dryden, David Sprout, and Shelley Knickerbocker in an amount this Court shall consider to be just, reasonable, and fair;

8.      Awarding Plaintiffs treble damages for unlawful eviction under RPAPL § 853 against Defendants Village of Dryden, Town of Dryden, David Sprout, and Shelley Knickerbocker;

9.      Awarding Plaintiffs punitive damages against David Sprout and Shelley Knickerbocker in their individual capacities.

10.     Awarding Plaintiffs damages against Defendants Bruno and Johnson for the breach of the Warranty of Habitability, Negligence, and Gross Negligence;

11.     Awarding any other damages as are necessary to fully compensate Plaintiffs;

12.     Awarding costs, disbursements and attorney's fees to Plaintiffs under 42 USC § 1988; and

13.     Awarding such additional and further relief as the interests of justice require.

Dated: February 9, 2023

ALISSA R. HULL, Bar No.: 519626
LEGAL ASSISTANCE OF WESTERN NEW YORK, INC.
Attorneys for Plaintiffs
902 Taber Street
Ithaca, New York 14850
ahull@lawny.org
Tel: (607) 273-3667

DAVID A. KAGLE, Bar No.: 703722
LEGAL ASSISTANCE OF WESTERN NEW YORK, INC.
Attorneys for Plaintiffs
16 W. William Street
Bath, New York 14810
dkagle@lawny.org
Tel: (607) 776-4126